1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE NORTHERN DISTRICT OF TEXAS

3                           FORT WORTH DIVISION

4    UNITED STATES OF AMERICA        )        CASE NO. 4:21-CR-00083-P
                                     )
5                                    )        FORT WORTH, TEXAS
     vs.                             )
6                                    )        SEPTEMBER 23, 2021
     ZACKEY RAHIMI                   )        9:15 A.M.
7

8                                VOLUME 1
                            TRANSCRIPT OF SENTENCING
9                  BEFORE THE HONORABLE MARK T. PITTMAN
                    UNITED STATES DISTRICT COURT JUDGE
10

11   A P P E A R A N C E S:

12   FOR THE GOVERNMENT:        FRANK L. GATTO
                                UNITED STATES DEPARTMENT OF JUSTICE
13                              NORTHERN DISTRICT OF TEXAS
                                801 Cherry Street, Suite 1700
14                              Fort Worth, Texas  76102-6882
                                Telephone:  817.252.5200
15

16   FOR THE DEFENDANT:         RACHEL M. TAFT
                                ASSISTANT FEDERAL PUBLIC DEFENDER
17                              NORTHERN DISTRICT OF TEXAS
                                819 Taylor Street, Room 9A10
18                              Fort Worth, Texas  76102
                                Telephone:  817.978.2753
19

20   COURT REPORTER:            MONICA WILLENBURG GUZMAN, CSR, RPR
                                501 W. 10th Street, Room 310
21                              Fort Worth, Texas  76102
                                Telephone:  817.850.6681
22                              E-Mail: mguzman.csr@yahoo.com

23

24   Proceedings reported by mechanical stenography, transcript
     produced by computer.
25

1                                    <u>**INDEX**</u>

2                                              PAGE   VOL.

3

4    Appearances ................................3      1

5    Defendant Admonished .......................3      1

6    Objections to Presentence Report

7          Court's Tentative Findings ............5      1

8          By Ms. Taft ...........................5      1

9          By the Government .....................7      1

10          By Ms. Taft ..........................10      1

11          By the Government ....................12      1

12    Court's Ruling ............................13      1

13    Motion Presented by Mr. Gatto .............14      1

14    Statements on Sentencing

15          By Ms. Taft ..........................18      1

16          By Defendant .........................22      1

17          By the Government ....................24      1

18    Sentence of the Court .....................27      1

19    Objection to the Sentence by Ms. Taft ......31      1

20    Court's Ruling ............................32      1

21    Defendant Admonished - Appellate Rights ....32      1

22    Proceedings Adjourned .....................32      1

23    Reporter's Certificate ....................33      1

24

25

1                    **P R O C E E D I N G S**

2                 *(September 23, 2021, 9:15 am.)*

3          *THE COURT:*  We'll begin with the case of United

4   States of America vs. Zackey Rahimi in Case Number

5   4:21-CR-83-P-1.

6          Would the attorneys please identify themselves.

7          *MR. GATTO:*  Good morning, Your Honor.  Frank Gatto

8   for the United States.  We're ready to proceed.

9          *MS. TAFT:*  Good morning, Your Honor.  Rachel Taft

10  for Mr. Rahimi.

11         *THE COURT:*  Good morning, Ms. Taft.

12         Mr. Rahimi, before you take a seat, would you please

13  state your name into the microphone?  And I'll need your full

14  name, please.

15         *THE DEFENDANT:*  Zackey Rahimi.

16         *THE COURT:*  Do you have a middle name? *(No response)*

17         Do you have a middle name?

18         *THE DEFENDANT:*  No, sir.

19         *THE COURT:*  Okay.  Thank you, sir, for stating your

20  name and acknowledging your presence here with us this

21  morning.

22         You-all can be seated while I make my preliminary

23  remarks.

24         Mr. Rahimi, you'll recall you appeared before the

25  U.S. Magistrate Judge here in Fort Worth on May the 26th of

1    2021.  At that time, Judge Cureton entered a plea -- or you

2    entered a plea of guilty before Judge Cureton to Count 1 of

3    the indictment charging you with firearm possession while

4    under a domestic violence restraining order, in violation of

5    18 United States Code 922(g)(8) and 924(a)(2).

6         You'll also recall, Mr. Rahimi, that Judge Cureton

7    also found that your plea of guilty was a knowing and

8    voluntary plea supported by an independent basis in fact

9    containing each of the essential elements of the offense.

10         You told the Judge on that day that you understood

11    the elements of the offense, you also agreed to the accuracy

12    of your factual resume, and you also admitted that you had

13    committed all of the essential elements of the offense.

14         Accordingly, on June the 10th of this year, I

15    entered an order accepting your plea and adjudging you guilty

16    of the crime alleged in the indictment against you.  There was

17    not a plea agreement in this case.

18         So, I'll ask you, Ms. Taft, did you and Mr. Rahimi

19    receive in a timely manner a copy of the presentence

20    investigation report, as well as the addendum to that report?

21         *MS. TAFT:*  We did, Your Honor.

22         *THE COURT:*  And have you had a chance to review both

23    of those documents very carefully with Mr. Rahimi?

24         *MS. TAFT:*  We have, Your Honor.

25         *THE COURT:*  Did the Government receive those in a

1    timely manner, Mr. Gatto?

2             *MR. GATTO:*  Yes, sir.

3             *THE COURT:*  All right.  Let me walk you through my

4    rulings on your objections, at least my tentative rulings,

5    Ms. Taft.

6             I believe you lodged one objection to the

7    presentence report, specifically with regard to paragraph 51

8    in the determination of what relevant conduct should be taken

9    into consideration.

10            I've taken a look at your objection, as well as the

11   dates for the conduct at issue, and I believe that it should

12   be overruled.

13            However, at this time I'll allow you to make any

14   argument you'd like to make.  But that's my initial

15   inclination with regards to your objection to paragraph 51.

16            *MS. TAFT:*  Yes, Your Honor.  I would like to make

17   some additional statements.

18            *THE COURT:*  Okay.

19            *MS. TAFT:*  The offenses that occurred on December

20   9th, 2019 do qualify as the same course of conduct, but they

21   are part of an ongoing series of offenses.  So, looking to the

22   three factors that the Fifth Circuit has used to determine

23   relevant conduct, 50 to 52 paragraphs in the PSR do meet all

24   of them.  Factual similarity, irregularity, repetitive nature

25   of the offenses and the temporal proximity, which has a

1   one-year threshold as well.

2         I think neither the Government's response, nor the

3   PSR really addresses any of these factors.  Instead, in the

4   addendum, it specifically addressed that because Mr. Rahimi

5   was not under a protective order on December 9th, 2019, and

6   was not a prohibited person at the time of the offense, the

7   three charges are not relevant conduct.  But whether he was a

8   prohibited person at the time or not is not something that the

9   guidelines or the Fifth Circuit asks us to consider when

10  determining relevant conduct.

11        Paragraphs -- contained in paragraphs 50 to 52, they

12  were offenses, such that he's being charged for them on the

13  state level.  And I think it's important because under Section

14  5G1.3(c) of the guidelines, it instructs the Court to run a

15  Federal sentence concurrent to any anticipated relevant

16  conduct to state court sentences.

17        I know the PSR leaves that guideline section out of

18  paragraph 88 and instead cites just to *U.S. v. Brown*.  But the

19  guidelines very plainly state that pending state cases that

20  are relevant conduct should be run concurrent.  So, it's very

21  important that, you know, we make that determination in order

22  to have that run concurrent.

23        I would also point out that going through the list

24  of offenses in paragraph 88, I noticed, just yesterday, that

25  paragraph 55 it listed as not related to the current offenses.

1    This is an aggravated assault charge that occurred on

2    November 12, 2020, it's well within the one-year time period.

3    And while there's no police report for that offense, even a

4    brief description of the aggravated assault really lends it

5    towards being relevant conduct to be included as a concurrent

6    sentence as well.

7              *THE COURT:*  All right.  Thank you, Ms. Taft.

8              I'd like to hear from Mr. Gatto.  Mr. Gatto, she's,

9    essentially, made a couple of points.  She argues that

10   although the restraining order wasn't entered until February

11   of 2020, because this was ongoing conduct, the actions that

12   occurred on December the 9th of 2019 should be considered as

13   part of the relevant conduct, even though they occurred, what,

14   three months prior?

15             You also have this issue she's pointed out with the

16   November 2019 offense and how that would be counted with

17   regards to the relevant conduct.  And as we both understand

18   from the argument she's just made, it's very important because

19   it affects how we deal with the pending state charges.

20             So, tell me how you'd like to proceed.

21             *MR. GATTO:*  Well, and that last point, I think, is

22   the crux, really, of it.

23             Just briefly I will say, I do tend to agree with the

24   PSR addendum.  I think the fact that he wasn't prohibited on

25   December 9th kind of makes it difficult to, technically,

1   include that as relevant conduct under 1B1.3.  I think, even

2   though it said it contemplates the conduct that they're

3   bringing in is relevant conduct, would be connected to the

4   offense of prohibited person in some way and is relevant based

5   on those factors, and he wasn't prohibited.

6          That being said, I really think the easiest way to

7   take care of this, in light of my upward variance motion, in

8   light of my asking the Court to consider all of this conduct

9   in deciding to upward vary, the real crux about her argument,

10  and I think her goal, is that she wants to fall under the

11  guidelines telling the Court that typically when you include

12  relevant conduct in there you should consider with state

13  cases, and there's a state possible anticipated sentence, you

14  should run it then concurrently.

15         Now, I don't know why the guidelines changed in

16  5G1.3, to sit there and take out the requirement that it

17  actually increase the guideline, because I think if you go

18  before that the whole purpose is, if appropriate, to mitigate

19  double punishment.  The Court is going to punish somebody for

20  those state offenses and being punished again for the same

21  state offenses.  That's why the guidelines recommend, at that

22  point, the Court consider running it concurrent.

23         I think the guidelines use more mandatory language,

24  but the case law is clear that it's not binding on the Court,

25  but still wants you to consider that.  The guidelines have

1    changed, for some reason, saying they no longer have to

2    increase the guideline amount and so forth and are still

3    qualified under 5G1.3.  I saw the commentary on that, and to

4    me it just says to clear up the confusion, and I'm actually

5    more confused than I'm not.

6         Because really the crux of it is, I'm asking you to

7    consider all of this conduct, which is state conduct, stuff

8    that he may very well be punished for in the state, to

9    increase his punishment above the guideline range of 120

10   months.  So, the spirit of really what 5G1.3 is, I think

11   ultimately the Court can say, Listen, it may not technically

12   be relevant conduct, but in light of the Government's motion

13   and if I'm going to do this, then I will consider the

14   guideline's instruction that it should run concurrent with the

15   state.

16        And then you can decide whether or not, under the

17   3553 *Alford* factors and where he would land on a Federal

18   sentence and how much punishment you give or take in there,

19   but if you still think it's appropriate to run consecutive for

20   the 3553 factors or whether you think now it's appropriate to

21   run it concurrent.

22        I think it would resolve her issue, really in the

23   end, if you sit back and say, Regardless of whether it's

24   relevant conduct, if I'm going to take this conduct into

25   consideration in ultimately punishing you, then I will at

1   least consider the guideline counsel which is running it

2   concurrent to those anticipated state sentences in these

3   cases.

4          *THE COURT:*  All right.  Let me take the easy way out

5   for now, and then when you argue your variance and I state the

6   sentence we'll take up the pending state charges.

7          Ms. Taft, based on the argument that I've heard

8   today, as well as the papers before me, I'm inclined to

9   overrule the objection.  I don't see how that this would be

10  part of the same conduct if it occurred in December of 2019,

11  and you don't have a protective order in place until February.

12  So, I am going to overrule the objection.

13         However, you've made some interesting points with

14  regards to concurrent versus consecutive and how we consider

15  those for the purposes of an upward variance or a guideline

16  sentence and how we do that.  So, we'll take that up at the

17  time.  But as far as your objection itself, I am going to

18  overrule it.  And that's going to be my final ruling.

19         So, let me make some findings with regards to the

20  PSR and the addendum.

21         *MS. TAFT:*  Your Honor, if I could.  I have one quick

22  oral objection to make briefly, if the Court will allow it.

23         *THE COURT:*  Go ahead.

24         *MS. TAFT:*  Thank you, Your Honor.

25         I would just object, briefly, to paragraphs 50 to

1    60, which detail Mr. Rahimi's pending state charges.

2              *THE COURT:*  You didn't object to these prior to the

3    hearing today, did you?

4              *MS. TAFT:*  I did not, Your Honor.

5              *THE COURT:*  So, you didn't lodge a written objection

6    to these?

7              *MS. TAFT:*  I did not, Your Honor.

8              *THE COURT:*  You're making them here today?

9              *MS. TAFT:*  Yes.

10             *THE COURT:*  So, you're objecting to paragraphs 50

11   through 60 related to all the conduct that's listed; is that

12   correct?

13             *MS. TAFT:*  Yes.

14             *THE COURT:*  Do you think that that's fair to do to

15   the Government or to the Court, that you wait until the day of

16   sentencing to bring this up?

17             *MS. TAFT:*  Your Honor, I'm just trying to preserve

18   for appeal.

19             *THE COURT:*  Well, if you wanted to preserve it for

20   appeal you should have filed something.  So, you waited until

21   the day of sentencing.  We have a sentencing that's been

22   scheduled now for several weeks and now you're springing this

23   on us.

24             You know, if you really want the Court to be able to

25   examine and look at the merits of an objection, you need to

1   give the Court time to do it.  And that's the key to

2   preservation of error, Is did you properly present it to the

3   Court in order for the Court to read and review and make an

4   informed ruling?  But when we wait until the day of, in the

5   middle of a hearing, and we decide to lodge multiple

6   objections, it really puts me in a difficult spot.

7            But go ahead and state your objection as

8   specifically as possible, and I will do my best to make an

9   informed decision when I rule on those.

10           Go ahead.

11           *MS. TAFT:*  Yes, Your Honor.

12           We would just object to those -- those paragraphs as

13   they lack to show reliability.  They're just police reports.

14           And that is all I have in that regard.

15           *THE COURT:*  All right.  Mr. Gatto, would you like to

16   make a response?

17           *MR. GATTO:*  Well, I do believe -- well, first off,

18   the case law is clear on that.  The information in the PSR is

19   presumed reliable, the burden is on the defendant to present

20   rebuttal evidence.  And there's a particular case that says

21   mere objection is insufficient as rebuttal evidence.  So, just

22   based on that, it's a mere objection, it would be insufficient

23   for her to rebut the presumption of the information that it is

24   true.

25           I am prepared here today.  I submitted a lot of

1   those reports in my upward variance motion, as well as the

2   videos of that evidence.  But I do have a case agent here

3   prepared, so if there's any findings of fact and contested

4   issues of fact that come up and need further resolvement, the

5   Government is prepared to present that testimony.

6          But at the moment, just based on the mere objection

7   and her requirement under case law to actually present

8   rebuttal evidence, I think you can overrule the objection.

9          *THE COURT:*  Let me go ahead and make my ruling.

10   Thank you, Mr. Gatto.

11          I do appreciate your objection, Ms. Taft, but I do

12   believe that it should be overruled for the reasons that I've

13   previously stated.  I don't believe that you rebutted the

14   presumption and that the factual statements that are there in

15   those paragraphs that you objected to are supported, in my

16   opinion.  And next time be sure you file your objection in

17   writing.

18          All right.  With that finding in mind, the

19   defendant's objections are overruled.  I will adopt as my

20   final findings of fact the statements of fact made in the

21   presentence report, subject to and including the changes and

22   qualifications made by the addendum to the presentence report

23   and that I made in response to the objections to the

24   presentence report.

25          And after having considered the conclusions

1    expressed by the probation officer in the presentence report

2    as to the appropriate guideline calculations and after having

3    considered the objections thereto, I determine the appropriate

4    guideline calculations in this case for Mr. Rahimi are as

5    follows:  Total offense level of 23, criminal history of I, an

6    imprisonment range under the guidelines of 46 to 57 months, a

7    supervised release range of one to three years and a possible

8    fine range of $20,000 to $200,000 plus costs of imprisonment

9    and supervision.

10            I do, obviously, want to give you -- the defendant a

11   chance to make your presentation.  However, I think it's best

12   at this time to take up the Government's motion for an upward

13   variance, and then I will turn it over to the mitigation stage

14   and I'll let you have an opportunity to speak, Ms. Taft,

15   outside of the motion for upward variance and also give your

16   client an opportunity to speak.

17            I think it's worthwhile me noting at this time that

18   I did receive a letter from the defendant's father, which I

19   had an opportunity to read and review prior to today's

20   hearing.  But I think it best, before we get any mitigation

21   argument or testimony, that we hear from Mr. Gatto on his

22   motion.

23            *MR. GATTO:*  Yes, Your Honor.

24            And as you know, I submitted the exhibits and the

25   videos to the Court.  So, I'm not planning on playing or

1    presenting additional evidence, unless the Court believes it's

2    necessary or appropriate.  And so that's why I have everything

3    prepared just in case.

4         *THE COURT:*  I did have an opportunity to review

5    everything prior to today's hearing, including the videos.

6         *MR. GATTO:*  Okay.  So, Your Honor, in going on that,

7    I think I was pretty exhaustive in the upward variance.  But I

8    want to say, you know, you're obviously required to consider

9    all of the 3553(a) factors, but that doesn't mean one

10   particular factor can't be glaring in this case.  To me, the

11   one particular factor glaring in all of this is that

12   protection of the public.

13         You're talking about six separate shootings here.

14   One that started in December, which led to him becoming a

15   prohibited person.  And then you've got a cluster of five

16   within a month's time frame.  And to me that first video,

17   where he causes this accident, gets out and just starts

18   shooting, is one of the most bone-chilling videos for me to

19   watch and see.  If that doesn't send chills down anybody's

20   spine seeing that, I don't know of much else that can.

21         To just come out and cause this accident, pull out

22   your gun and just start emptying your clip into that other

23   person's car, to me, I think, that truly shows there is a

24   grave and callous disregard of human life.

25         And as mentioned in there, I think it's a miracle of

1   God that he hasn't killed anybody.  I think it's a miracle of

2   God that he hasn't hurt anybody.  And I really think it would

3   be a matter of time before he does, and that's why I'm asking

4   this Court to delay that time as long as you can under the

5   statute, which is the 120 months.

6           I know -- I think I read in my colleague's

7   sentencing memo about how there's really no need for

8   deterrence here, he spiraled out of control when he got this

9   protective order and he couldn't see his child anymore.  To

10  me, I think that proves, too, that deterrence would be your

11  second factor here, because here he is, he's got this, you

12  know, he has this domestic violence incident with the mother

13  of his child, and it's a pretty brutal one, and it causes her

14  to go get a protective order from him, causes him not to see

15  his child.

16          And instead of that being the wake-up call that it

17  should have been to say, Hey, I've got some issues here, I

18  need to resolve this if I want to be a good father in my

19  child's life and either repair this relationship with this

20  woman or at least repair, in a sense, where we can be parents

21  together to our child, he goes off on this violent spree.  And

22  if that doesn't deter him, then the only thing left for us to

23  do is the 120, is to also try and see that that drives home a

24  message.

25          But the overriding factor is we need to protect the

1  public.  We're talking a series of six total shootings, five

2  within a month's time frame.  Another video with him shooting

3  a gun in the air with his children right there.  Those bullets

4  are going to come down somewhere.  How many reports has the

5  Court read where children are shot by stray bullets?  And

6  that's particularly what happens there a lot of times.  Thank

7  God it has not happened in this case.

8         But I would submit to the Court, the mere fact that

9  we are lucky, he's lucky he hasn't killed anybody or hurt

10  anybody, doesn't mean those were not serious offenses, in

11  hindsight.  Doesn't mean that he's not a dangerous person that

12  we need to protect the public from.  It actually means he is,

13  and that's the crux of my defense and my request for 120

14  months.

15         THE COURT:  All right.  Thank you, Mr. Gatto.

16         Ms. Taft, would you like to respond?  And I think

17  what I'll do, I'll let you respond, and then I'll defer my

18  ruling, and then you can go into your mitigation arguments,

19  including those that are in your sentencing memorandum.

20         MS. TAFT:  Your Honor, I will just postpone until

21  mitigation.

22         THE COURT:  That's what I want you to do.

23         MS. TAFT:  Perfect.

24         THE COURT:  No, now.

25         MS. TAFT:  Nothing now, Your Honor.

1          *THE COURT:*  All right.  Then would you like to make
2   any remarks on behalf of your client?

3          *MS. TAFT:*  I would, Your Honor.

4          *THE COURT:*  Okay.

5          *MS. TAFT:*  Your Honor, we are requesting a sentence
6   within Mr. Rahimi's guideline range for a number of reasons.

7          First off being his criminal history.  He is in
8   category I, with one prior conviction for which he served a
9   six-day sentence on that.

10          I understand the Government is urging the Court to
11  use the conduct alleged in the pending state cases as
12  justification for the maximum sentence in this case.  But the
13  heart of this, paragraphs 50 to 60, do remain pending at the
14  state level.  He has pleaded guilty Federally to possessing a
15  firearm as a prohibited person.  And I understand that the
16  case law and guidelines do not force the Court to wear
17  blinders as to everything else, relevant conduct, pending
18  offenses.

19          But this is not a case where the PSR calls for an
20  upward departure/upward variance based on years or decades of
21  convictions where someone has not repeatedly learned their
22  lesson and therefore warrant the higher criminal history score
23  and the higher sentence in general.

24          But here Mr. Rahimi hasn't pleaded guilty, nor has
25  he been found guilty of the state cases.  And I'm sure that

1    once he's transferred back to the state he will stand trial on

2    those, enter into some sort of plea.  But he has a right,

3    under the Constitution, to have the trial and to have that

4    state process play out.  And so the state is in a unique

5    position to handle those pending cases and to punish him for

6    those pending cases.  I think it's noteworthy that the

7    punishment on the state level is actually much harsher than

8    here, with the range of 2 to 20 years in the aggravated

9    assaults.

10         So, the Constitution and respect for our legal

11    system demand that the state process play out, and the pending

12    unproven state cases should not be given necessarily the

13    weight that the Government asks for them to receive.  The

14    guidelines to account for the relevant conduct, he does

15    receive a plus-four-level enhancement, bumping him from the

16    range of 30 to 37 up to 46 to 57 months.

17         And looking to the guidelines, even if Mr. Rahimi

18    had been charged Federally with an aggravated assault, the

19    guidelines still would not warrant a sentence much different

20    than what we're looking at under the firearms guidelines.  The

21    aggravated assault guideline is found in Section 2A2.2.

22    Starts out with the base offense level of 14.  He received

23    five points for discharge of a weapon.  And with acceptance of

24    responsibility that put him at level 16.  That's lower than

25    what he's looking at under the firearms guidelines section.

1          And even assuming the worst-case scenario, under

2     that section of the guidelines, and it's if there's permanent

3     bodily injury, he would still only warrant -- that still only

4     warrants an extra seven levels.  So, that would put him at,

5     with acceptance of responsibility, at a level 23, which is

6     exactly where he is right now under the firearms guideline.

7          So, I think even the guidelines themselves don't

8     call for a maximum ten-year sentence here where there is

9     permanent injury, worst-case scenario in an aggravated

10    assault.  Here we don't have that charge, we don't have those

11    guidelines.  And the guidelines call for a sentence that is

12    significantly lower than what the Government is asking for.

13         To the Government's credit, they have been very

14    forthcoming with me about their intention to request a maximum

15    sentence here.  But I think their solution on what to do with

16    Mr. Rahimi is to lock him up for as long as possible, and

17    that's simply not a long-term solution.  Mr. Rahimi is 21 now.

18    He's young and impressionable, and one day he's going to be

19    released back to the community.

20         And so when fashioning a sentence, I would ask the

21    Court to consider, not just punishment and deterrence as the

22    Government requests, but also rehabilitation as called for

23    under 3553(a)(2).  Even with a five-year sentence, if

24    Mr. Rahimi were to be released in his mid 20s, at that time

25    we would see full formation of his frontal cortex and we would

1    see, certainly, just by nature of maturity level, a different

2    person when he is released.

3            And so, I think, throughout his life, Mr. Rahimi has

4    had issues.  He's never had access to anger management, to

5    mental health treatment to address those issues; but he does

6    plan on doing that while he is in the BOP.  I know the time

7    Mr. Rahimi has spent in custody in Johnson County Jail has

8    been very difficult for him.  He's talked to me about some of

9    the inmates he's met there, who don't know their children,

10   their parents have passed away and they weren't able to be

11   there, and he doesn't want that for himself.  He does want to

12   make a change, turn things around, get an education.

13           He's lucky enough to have family support.  His

14   parents wanted to be here today, but they were concerned for

15   their health that it wasn't the best idea.  But they do

16   support him wholeheartedly.

17           Last, I would request for the sentences to be served

18   concurrent to the pending state cases, and request that the

19   Court adjust whatever sentence that it intends to impose by

20   five months to account for the time that Mr. Rahimi has spent

21   in Federal custody while he's been in primary state custody.

22   We would persist with our request for a sentence within

23   Mr. Rahimi's guideline range.

24           THE COURT:  All right.  Thank you, ma'am.

25           I'd like to give Mr. Rahimi an opportunity to speak.

1          *THE DEFENDANT:*  Your Honor, I apologize for what I'm

2     responsible for, and I apologize to my family for putting them

3     in pain, stress, tears and the struggle.  This has been the

4     longest I have ever been in jail, and I have for sure learned

5     my discipline *(sic)*; and mostly what has been hurting me the

6     most is being away from my family.

7          I've been through a lot.  From my young age being

8     bullied my whole school life, from elementary to high school,

9     being used, took advantage, wearing the same clothing almost

10    every day and to be able to have my family spend less money to

11    try to maintain.  You know, the way I'm being very friendly to

12    everybody, but I mainly stopped being very social becoming

13    antisocial and a loner because of how society was doing me.

14         My family struggling and having financial problems

15    and losing my closest beloved family members in my life.  My

16    family has always been very loving and caring, great, teaching

17    me what's right and wrong, not to do.  And I would be on the

18    same back to my family and baby mother and my precious child.

19    But I was being ignorant being around the wrong people that I

20    thought for once were friends.  And my family knew it wasn't

21    right, very bad influence, and ended up using me, taking

22    advantage, creating all the problems, issues and troubles on

23    me.

24         I know the PSR says the terrible things, but that is

25    truly not me.  I am a very good human being, but it's my

1    mistake for being around those wrong people and not listening

2    to my family.  I very regret not listening to my family,

3    because this has been the most pain I've ever been, away from

4    my family, not able to be there for them, not able to support

5    them and maintain them financially, and losing my beloved

6    grandmother, not able to spend her last moments with her.

7          I'm a new man, having faith and seeking only the

8    straight pathway and staying very close to the Lord.  When I'm

9    finished and released, I'm doing what's right and for the

10   best.  I'm going to obey the laws, be a rightful citizen for

11   the community, go to Universal Technical Institute to study to

12   become an automobile engineer.  Meanwhile, I have a great job

13   manufacturing automobiles at General Motors.  Stay completely

14   away from all bad influence, wrong people and all bad things,

15   especially firearms.

16         But I'm staying firm on obeying the laws and making

17   sure to stay away from all wrong things.  I'm definitely for

18   sure not looking back on my past, to do right, never come back

19   to jail, never, ever being away from my family again.  I want

20   to make sure to be able to be with my precious family and

21   child all the time.  They are everything to me.  I want to

22   make sure they stay proud and peaceful and keeping a great

23   father figure to my precious child, showing him the right way.

24         Because my family are getting older day by day and

25   sick.  It hurts my soul to see them go through this, not able

1  to spend time, seeing me finish college and marry the right

2  woman to have one big family.  But I want to make sure to do

3  all of this and everything the right way soon as I'm finished

4  and released.  I won't ever let my family down and won't let

5  you down, Your Honor.

6          I apologize again, and thank you for your time.

7          *THE COURT:*  All right.  Thank you.

8          Anything further, Ms. Taft?

9          *MS. TAFT:*  Nothing further, Your Honor.

10          *THE COURT:*  Mr. Gatto, I'll give you the last word.

11  Is there anything you'd like to add?

12          *MR. GATTO:*  Yeah.  I want to quickly -- some other

13  guidelines provisions were bought up.  If you look at 53, of

14  the guidelines, 2A2.1, assault with attempt to commit murder

15  and attempted murder.  It says, at 33, If the object of the

16  offense would have constituted first-degree murder.

17          Is there any question in the Court's mind, in that

18  first video, that if he would have killed that guy that he had

19  caused the wreck in that car that that would not have been

20  first-degree murder?  There's clearly intent there.  He comes

21  out and he points the gun right at him and he unloads that

22  clip, and so forth.

23          So, that's at 33.  And if you take that and give him

24  three levels at a 30, one, he's at 97 to 121 months.

25          *THE COURT:*  All right.  Thank you, Mr. Gatto.

1          I need to go off the record and talk with probation.

2   We have several state cases, I want to make sure that I state

3   correctly the sentence when I state it.  So, I need to do some

4   review on how to properly handle that.  We'll go off the

5   record momentarily.

6          *(Short recess taken)*

7          THE COURT:  Let's go back on the record in the

8   sentencing of United States vs. Zackey Rahimi.

9          Mr. Rahimi, I'll need you to please rise, I'll be

10  stating the sentence at this time.

11         I wanted to take a break to, again, review the

12  presentence investigation report and the relevant addenda and

13  the rest of the files and the arguments that I've heard this

14  morning from Mr. Gatto and Ms. Taft.

15         In particular, I want to be sure, given the large

16  number of state offenses that Mr. Rahimi is subject to, that I

17  correctly, at least in my mind, determine what's relevant

18  conduct, what's unrelated conduct and what can be taken into

19  consideration with regard to the state sentence.  So, I did

20  want to be sure to doublecheck those and make any changes, if

21  necessary.

22         I do believe at this time I am satisfied with regard

23  to how the Court should consider the state sentences and

24  whether they should be served concurrently or consecutively to

25  the sentence that the Court will be imposing.

1          Before I state the sentence, Ms. Taft, do you have a

2    recommendation for placement?

3          *MS. TAFT:*  Yes, Your Honor.  We would request

4    placement, I believe, at Seagoville or Pollock.

5          *THE COURT:*  Or what, ma'am?

6          *MS. TAFT:*  Seagoville or Pollock.

7          *THE COURT:*  P-O-L-L-A-C-K.

8          *MS. TAFT:*  I believe it's O-C-K.

9          *THE COURT:*  I don't know, given the -- let's just

10   say the violent nature of what we have before us, whether

11   he'll qualify for placement there, but I'll certainly make

12   that recommendation.

13         Any other requests that you have?

14         *MS. TAFT:*  No, Your Honor.

15         *THE COURT:*  Okay.  Thank you, ma'am.

16         At this time I will state the sentence determined

17   after my consideration of all the factors set forth in Title

18   18 United States Code, Section 3553(a), including especially

19   the advisory sentencing guidelines issued by the United States

20   Sentencing Commission, as well as the conduct that was

21   admitted by the defendant in his factual resume.

22         I will give Mr. Gatto and Ms. Taft a chance to state

23   any legal objections that they have before I finally impose

24   the sentence.

25         I do want to say that I do believe that an upward

1    variance is in order.  Although, I don't believe the amount

2    requested by the Government is appropriate, and I will state

3    my reasons for it.  And I also need to state that even if the

4    Government had not filed an upward variance, I believe that

5    the facts and circumstances of this case do justify one, and

6    I'll state those reasons.

7            Let me state the following, it is the judgment of

8    the Court that the defendant, Zackey Rahimi, in Case Number

9    4:21-CR-83-P, is hereby committed to the custody of the

10   Federal Bureau of Prisons for a period of 73 months.  This

11   sentence takes into account the five months that he has served

12   on his state court custody.  I considered that when

13   formulating the sentence, and I shaved five months off of what

14   I was originally going to do to take into account that time.

15           The Court makes the following findings:  This

16   sentence shall run consecutively to any future sentence which

17   may be imposed in Case Numbers 1635415, 1635418, 1635420 and

18   1654868 out of Tarrant County, Texas, Criminal Court No. 5;

19   and Case Numbers 1657182D and 1678799D, out of Criminal

20   District Court No. 3, in Tarrant County.

21           However, this sentence shall run concurrently with

22   any future sentence which may be imposed in Case Numbers

23   1672225 and 1671482 out of Tarrant County, Texas, Criminal

24   Court No. 5; and Case Numbers 1672223D, 1676245D and 1671143D

25   out of Criminal District Court No. 3, in Tarrant County,

1   Texas.

2           The Court does not order a fine or the cost of

3   incarceration, because the defendant does not have the

4   financial resources or future earning capacity to pay a fine

5   or the costs of incarceration.  Furthermore, restitution is

6   not ordered because there is no victim in this case other than

7   society at large.

8           The Court is also making the following forfeiture

9   order pursuant to 18 United States Code, Section 924(d) and

10  28 United States Code, Section 2461(c).  It is hereby ordered

11  that defendant's interest in the following property be

12  forfeited to the United States of America:  A Glock, Model 21

13  Gen 4, .45-caliber pistol, bearing Serial No. YBX386, and a

14  Century Arms, Model C308 Sporter, .308-caliber rifle, bearing

15  other Serial No. C308E32588.

16          It is further ordered that upon release from

17  imprisonment, Mr. Rahimi be placed on a term of supervised

18  release for a period of three years.  While on supervised

19  release, Mr. Rahimi, you're going to be subject to the

20  mandatory conditions of release listed in 18 United States

21  Code, Section 3583(d), as well as the standard conditions

22  listed in 5D1.3(a) of the United States Sentencing Guidelines

23  Manual.

24          In addition, you will be subject to certain

25  additional terms of supervised release.  Those additional

terms were set forth in a separate order that was provided to

you prior to going on the record this morning.  And that order

has now been returned to me with your signature, Mr. Rahimi.

With your signature on that order, you've acknowledged that

you received those additional terms, you waive them being read

in open court here this morning.  But most importantly, during

that three-year term of supervised release, you agree to be

bound by all of those terms and subject to revocation and

possible reincarceration for any violation of them.  All of

these conditions are set forth in the presentence report in

this case in Part G.

It's further ordered that defendant pay a special

assessment in the amount of $100.

In this case, the Court determined that an upward

variance is warranted because Mr. Rahimi has a history of

criminal behavior beginning at age 11, and this behavior has

continued until his arrest for the instant offense at the age

of 21.  The defendant has been involved in multiple shootings

since March of 2020.  Additionally, he has a history of

assaultive conduct resulting in a protective order, which he

showed a disregard for by violating.

Since the first known shooting occurred in March of

2020, the defendant has been involved in a series of shootings

lasting from November of 2020 to January of 2021.  The

defendant has continuously possessed firearms while

1    prohibited, and his use of firearms puts him at great risk to

2    the community.  As Mr. Gatto pointed out in his motion, it

3    appears it's only a matter of time before someone is seriously

4    injured if this behavior is allowed to continue.

5            He continued to show a disregard for human life by

6    shooting at members of the public, shooting into the air,

7    shooting into residences and buildings.  Certainly this

8    defendant is a danger to the community.

9            As such, I determined that a sentence above the

10   guideline range results in a reasonable sentence and takes

11   into consideration the history and characteristics of

12   Mr. Rahimi, the nature and circumstances of this offense and

13   the seriousness of the offense to promote respect for the law

14   and protect the public from further crimes of this defendant.

15   I would have made this decision even without the Government's

16   motion.

17           In determining the sentence, the Court considered

18   the advisory guidelines, as well as the other statutory

19   directives listed at 18 United States Code, Section 3553(a).

20   It was my determination that a 73-month sentence, taking into

21   account the five months the defendant has been in state

22   custody, and a three-year term of supervised release, was

23   sufficient, but not greater than necessary, to comply with the

24   purposes set forth in paragraph 2 of Section 3553(a), reflects

25   the seriousness of and provides a just punishment for the

1    offense, promotes respect for the law and affords adequate

2    deterrence to criminal conduct, as well as protecting the

3    public from further crimes of this defendant.

4           Even if my guideline calculations here today are

5    later shown to be incorrect based on the facts and

6    circumstances of this case that I have considered, this is the

7    same sentence that I would have imposed otherwise simply

8    looking at the guidelines, simply looking at the factors set

9    forth in 3553(a).

10          I will make a nonbinding recommendation the

11   defendant be able to serve his sentence at either the FCI

12   Pollock or Seagoville facilities, if he so qualifies.  Again,

13   that's a recommendation only, I don't control placement by the

14   BOP.

15          So, I have now stated the sentence and the reasons

16   therefor.  Is there any reason why it should not be imposed as

17   stated, either from the Government or you, Ms. Taft?

18          *MR. GATTO:*  No, Your Honor.  Not from the

19   Government.

20          *MS. TAFT:*  Your Honor, we'd object on the record to

21   the substantive reasonableness of the sentence, as well as the

22   procedural reasonableness.

23          *THE COURT:*  Okay.  I understand substantive

24   reasonableness, in that you think the sentence is too high.

25          What is the procedural objection?

1          *MS. TAFT:*  Yes, Your Honor.  Just that the Court

2     considered the lack of the unreliable evidence contained in

3     paragraphs 50 through 60 when determining the sentence.

4          *THE COURT:*  Okay.  For the reasons previously

5     stated, those objections are overruled.  The sentence will be

6     imposed as stated.

7          I do need to briefly inform you of your appellate

8     rights, Mr. Rahimi.  You do have the right to appeal the

9     sentence that I just imposed.  You also need to know, if you

10    do decide to appeal on any ground, you also have the right to

11    apply for what's called leave to appeal in forma pauperis, if

12    you're unable to pay for the cost of an appeal.

13         Another document that you signed this morning is a

14    document called a Notice of Right to Appeal Sentence.  You've

15    also signed that, as well as Ms. Taft, and it's been returned

16    to me.  In that order, I'm outlining what your appellate

17    rights are.  So, you need to be advised that's not your notice

18    to me that you're appealing your sentence that I just imposed.

19         Rather, if you do decide to appeal, you need keep

20    this in mind, you must appeal within 14 days, it must be in

21    writing and it must be filed with the Court.  And Ms. Taft

22    will answer any questions you have in that regard.

23         At this time I will be remanding you to the custody

24    of the United States marshal.  Thank you.

25                    *(Proceedings Adjourned)*

1          REPORTER'S CERTIFICATE

2

3        I, Monica Willenburg Guzman, CSR, RPR, certify

4   that the foregoing is a true and correct transcript from

5   the record of proceedings in the foregoing entitled matter.

6        Further, the proceedings were held during the

7   COVID-19 Pandemic and some parties, including witnesses,

8   were speaking while wearing masks.

9        I further certify that the transcript fees format

10  comply with those prescribed by the Court and the Judicial

11  Conference of the United States.

12        Signed this 29th day of November, 2021.

13

14                        /s/Monica Willenburg Guzman
                          Monica Willenburg Guzman, CSR, RPR
15                        Texas CSR No. 3386
                          Official Court Reporter
16                        The Northern District of Texas
                          Fort Worth Division
17

18  CSR Expires:        7/31/2023

19  Business Address:   501 W. 10th Street, Room 310
                        Fort Worth, Texas  76102
20
    Telephone:          817.850.6681
21
    E-Mail Address:     mguzman.csr@yahoo.com
22

23

24

25